IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SHIRLEY DAVILA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:23-cv-01139 |
| | § | |
| ALLSTATE VEHICLE AND | § | |
| PROPERTY INSURANCE COMPANY, | § | **JURY DEMANDED** |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Shirley Davila, Plaintiff herein, files this Original Complaint against Defendant Allstate Vehicle and Property Insurance Company and, in support of her causes of action, would respectfully show the Court the following:

## I.
## THE PARTIES

1. Shirley Davila ("Davila") is a citizen of the State of Texas residing at 6737 McCoy Dr., Watauga, Texas 76148 which is her true, fixed, and permanent home.

2. Defendant Allstate Vehicle and Property Insurance Company (hereinafter referred to as "Allstate"), was, and is at the date of this filing, an Illinois corporation incorporated in the state of Illinois with its principal place of business located at 3075 Sanders Road, Suite H1A, Northbrook, Illinois, 60062-7127. Allstate, therefore, is not a citizen of the state of Texas for diversity purposes. Allstate may be served via certified mail return receipt requested via its registered agent for service in the state of Texas, C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas, 75201.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332. Plaintiff's true, fixed, and permanent home is in Tarrant County, Texas. Therefore, Plaintiff is a citizen of Texas. Defendant is a corporation incorporated in Illinois, and has its principal place of business in Illinois, and is thus a citizen of Illinois. Therefore, as Plaintiff is a citizen of Texas, and Defendant is a citizen of Illinois, complete diversity exists. Additionally, Plaintiff seeks damages in excess of $75,000. Specifically, Plaintiff seeks proceeds from her insurance policy in the amount of $55,409.61, plus attorneys' fees and interest. Further, Plaintiff alleges Defendant knowingly committed the acts complained of herein. As such, Plaintiff is entitled to extra-contractual damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas, Fort Worth Division. The property at issue in this cause is in the Northern District of Texas, Fort Worth Division.

## III.
## FACTUAL BACKGROUND

5. Davila is a named insured under an insurance policy issued by Allstate identified as Policy 886 651 854 ("Policy"). At all times relevant to this suit, Davila was the owner of the property located at 6737 McCoy Dr., Watauga, Texas 76148 ("Property") and a named insured under the Policy.

6. The Property sustained a massive hail and wind event on March 3, 2023, or at all times during the Policy period, causing extensive damage to the roofing system and exterior and interior of the Property. Davila immediately reported this storm and the damage it caused to the Property to Allstate. Allstate acknowledged receipt of the claim and commenced its investigation.

7. Allstate assigned claims representative James Jensen ("Jensen") to adjust the claim. Jensen first inspected the Property on or around March 23, 2023. Once at the Property, Jensen conducted a substandard inspection, during which he spent an inadequate amount of time inspecting the physical Property, failed to conduct any testing of hail and wind damage and its impact on the structure, and failed to thoroughly scope all the damages to the Property. Jensen simply determined, without any reasonable basis, that the Property had been only minimally damaged by wind and hail. In doing so, Jensen willfully disregarded the hail and wind damage that was apparent to the naked eye. The inadequacy of the inspection and investigation is further evidenced by Jensen's failure to give an adequate explanation as to why he believed there was only minimal hail and wind damage and why the damages he did observe did not warrant roof replacement despite a significant hail and wind event during the Policy and corresponding damage or why he omitted the damages from any report caused by obvious hail and wind damage during the Policy period with Allstate. Jensen failed to properly scope Davila's damages and underestimated and undervalued the cost of repairs to the damaged items, thereby failing to allow adequate funds to cover the cost of repairs to the damages sustained. In total, Jensen determined Davila's damages amounted to a paltry $7,104.85. After application of Davila's deductible, Davila was to receive just $3,011.85 to repair the Property. Jensen entered these findings on March 23, 2023.

8. Dismayed by Allstate's improper denial, Davila then retained licensed public adjuster Charles Townsend ("Townsend") of Provident Public Adjusters, LLC ("Provident") to begin working with Allstate to reach a satisfactory resolution of the claim. Allstate, upon realizing its coverage decision was being called into question, assigned a new adjuster, Michael Schillaci ("Schillaci") to the claim. On May 26, 2023, Schillaci submitted a revised estimate on behalf of

Allstate. To his credit, he at least acknowledged additional damages that had been ignored by Jensen during his original inspection. Schillaci represented Davila's damages amounted to $12,129.93 (RCV). This meant Davila would receive just $3,135.63 in additional coverage until repairs were completed.

9. Provident adjuster Townsend inspected the Property on or around June 10, 2023. During his inspection, he documented extensive hail and wind damages throughout the Property. On June 15, 2023, Townsend completed an estimate showing the total replacement cost value of Davila's Dwelling damages amounted to **$62,517.77**. Townsend provided copies of his estimates and photographs to Allstate for review, but Allstate refused to consider any evidence supporting the fact that the damages were, in fact, covered by the Policy.

10. On June 26, 2023, Provident representative Jenny Calliham ("Calliham") emailed Allstate advising Davila had additional concerns regarding the storm damage. Calliham attached a proof of loss signed by Davila showing the total amount of covered damages from the March 3, 2023 storm was $58,424.77 (after application of the deductible). Calliham also requested that Allstate reinspect the Property to address additional damage that had been missed during its two prior inspections. Allstate failed to acknowledge Calliham's correspondence. Accordingly, Provident representative Sarah Mitchell-Butler ("Mitchell-Butler") wrote to Allstate again on June 30, 2023 asking Allstate to provide dates for the reinspection. Nearly a month later, Allstate still had not acknowledged the proof of loss or reinspection request. Calliham wrote to Allstate on July 23, 2023 and asked—for a third time—that Allstate respond. It was not until July 30, 2023 that Allstate finally acknowledged Provident's communications. Unbeknownst to Davila and Provident, Allstate had assigned a third adjuster to the claim—Terrice Robinson ("Robinson"). Robinson curtly advised, "We have already inspected this home twice, a third inspection would be

unnecessary at this juncture." Robinson stated he would review the claim and notify Provident when his review was complete.

11. On August 1, 2023, Robinson submitted a <u>third estimate</u> on behalf of Allstate. This time, Allstate claimed the total covered damages amounted to $12,984.83 (ACV). After application of the deductible and subtracting for depreciation and Allstate's prior payments, Davila was to receive just $854.91 in additional payments. Robinson emailed Provident his estimate on August 1, 2023. Calliham responded to Robinson the following day and outlined in detail the deficiencies contained in Robinson's estimate. Robinson refused to consider the disputed line items and stood by his original findings, despite having never personally inspected the Property.

12. In a final attempt to resolve the claim amicably, Calliham issued a final demand letter, dated August 15, 2023, on behalf of Davila. Calliham outlined the impropriety of Allstate's handling of the claim:

> On May 4, 2023 Allstate was notified with Provident Public Adjusters, LLC contract along with a request for a certified policy as well as all documentation related to the claim for proper review. A mutual inspection was also requested at this time. Per Allstate, James Jensen, Allstate would not agree to a reinvestigation without photos and estimate to prove that they would need to reinvestigate. PPA reiterated that the certified policy and all claim related documents were requested from Allstate and had not been received yet. James advised that Allstate's PA department would take over and address the request for documents and PPA reminded James on 5/24/2023 that the certified policy is needed as soon as possible. Allstate adjuster, Michael Schillaci emailed to PPA a revised estimate and notification of additional payment being issued. A SPOL was provided to Allstate with PPA estimate indicating the repair items that were not included in their estimate as well as the supporting photo report on 6/26/2023. Since no response was received from Allstate, PPA requested status update on 6/30/2023 and again on 7/23/2023. A different adjuster with Allstate advised PPA on 7/30/2023 that they were taking over the handling of the claim, Terrice Robinson. Terrice notified PPA that an additional inspection would not be necessary and the documents submitted would be reviewed. On 8/1/2023 Terrice sent a revised estimate and

5

> a letter describing why Allstate would not be covering specific line items included in PPA estimate. The denial of these line items was based on policy language which Terrice included excerpt of in the letter. This specific policy language has nothing to do with the items in the PPA estimate and do not support the denial of payment of these specific line items. The very next day, PPA provided a list of disputed items (included later in this letter as well) and details either proving that they are covered in this claim situation or requesting response showing exactly where they are excluded in the policy. Terrice responded with decision to uphold denial of paying those line items. This is not acceptable and must be rectified.

Calliham further discussed the discrepancies between Provident's and Allstate's estimates and why additional coverage was warranted under the Policy. Calliham requested that Allstate respond by August 18, 2023 but, unsurprisingly, Allstate did not acknowledge Calliham's letter.

13. Although Allstate was aware of Davila's clear and present hail damage and the reported damage was covered by the Policy, Allstate decided the claim should be essentially denied without conducting a thorough and reasonable inspection of the damages. Ultimately, Allstate determined that the damages were not covered under the Policy. After requesting Allstate reconsider its improper investigation and denial, Allstate simply remained steadfast in its denial without conducting a thorough inspection of the Property and with direct evidence of hail damage contradicting its position. Allstate, in denying the claim without conducting a reasonable investigation, did not take any samples, and did not conduct any testing to determine the extent of the storm damage.

14. Allstate, along with its personnel, failed to thoroughly review and properly oversee the work of the assigned claims representatives and adjusters, including Jensen, Schillaci, and Robinson, ultimately approving an improper adjustment of, and an inadequate and improper denial of Davila's claim. Allstate misrepresented that the majority of Davila's damages were not covered, when the losses, in fact, were clearly covered causes of loss during the Policy's period.

6

Specifically, Allstate represented to Davila that only a fraction of the damage to the Property was caused by a covered cause of loss within the Policy period without any proper investigation when, in fact, Allstate knew, or with a reasonable investigation should have known, that the cost of repairs to all the damages was a clear covered loss.

16. Together, Allstate, Jensen, Schillaci, and Robinson set out to deny properly covered damages. Because of this unreasonable investigation and failure to provide coverage for the damages sustained, Davila's claim was improperly adjusted, and she was denied adequate payment to repair her Property. To this date, Davila has yet to receive proper payment under the insurance policy.

## IV.
## CAUSES OF ACTION

16. Each of the foregoing paragraphs is incorporated by reference in the following:

**A.  Breach of Contract**

17. Allstate had a contract of insurance with Plaintiff. Allstate breached the terms of that contract by wrongfully denying the claim, and Plaintiff was damaged thereby.

**B.  Prompt Payment of Claims Statute**

18. The failure of Allstate to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

19. Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to statutory interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.  Bad Faith/Deceptive Trade Practices Act ("DTPA")**

20. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

21. Defendant violated Section 541.051 of the Texas Insurance Code by:

  (1) making statements misrepresenting the terms and/or benefits of the policy. As referenced above, Allstate mispresented coverage for wind and hail damage to the Property during the Policy period was a covered cause of loss and misrepresented to Davila the coverage's terms.

22. Defendant violated Section 541.060 by:

  (1) misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

  (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

  (3) failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

  (4) failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

  (5) refusing to pay the claim without conducting a reasonable investigation with respect to the claim. As referenced above, Allstate failed to meet its statutory timelines governed by the Texas Insurance Code, failed to respond to multiple requests for information, failed to disclose information it relied on in its investigation, failed to conduct testing of the damage, failed to allocate damage occurring during the Policy, and failed to consider any weather data.

23. Defendant violated Section 541.061 by:

      (1)     making an untrue statement of material fact;

      (2)     failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made; and

      (3)     making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. As referenced herein, Defendant misrepresented wind and hail damage that occurred during the Policy period was not a covered loss, failed to provide requested information it used to render its claim decision, and claimed wind and hail damage was preexisting without conducting a reasonable investigation.

24.    At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

25.    Defendant has violated the Texas DTPA in the following respects:

      (1)     Defendant represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

      (2)     Allstate failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed;

      (3)     Allstate, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by Section

9

17.50(a)(1)(3) of the DTPA in that Allstate took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code.

26. Defendant knowingly committed the acts complained of herein. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

**D.    Breach of the Duty of Good Faith and Fair Dealing**

27. Defendant Allstate's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to Plaintiff.

28. Defendant Allstate's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant Allstate knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## V.
## KNOWLEDGE

29. Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

**E.    Attorneys' Fees**

30. Plaintiff engaged the undersigned attorneys to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

31. Plaintiff is entitled to reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

32. Plaintiff further prays that Plaintiff be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiff's causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VI.
## CONDITIONS PRECEDENT

33. All conditions precedent to Plaintiff's right to recover have been fully performed or have been waived by Defendant.

## VII.
## JURY DEMAND AND PRAYER

34. Plaintiff requests that a jury be convened to try the factual issues of this case.

35. WHEREFORE, PREMISES CONSIDERED, Shirley Davila prays that, upon final hearing of the case, she recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Shirley Davila be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Shirley Davila may show herself to be justly entitled.

Respectfully submitted,

*/s/ Christopher P. Peirce*
Jeffrey T. Embry
Bar Number: 24002052
Margaret C. Pennell
Bar Number: 24116893
Hossley Embry, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Telephone No. 903-526-1772
Telecopier No. 903-526-1773
jeff@hossleyembry.com
meg@hossleyembry.com

AND

Christopher P. Peirce
Bar Number: 24041509
Hossley Embry, LLP
14241 Dallas Pkwy, Suite 240
Dallas, Texas 75254
Telephone No. 214-390-2349
cpeirce@hossleyembry.com

**ATTORNEYS FOR PLAINTIFF**